AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
 *Lieutenant General*
DAVID M.S. DEWHIRST
 *Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
ALWIN LANSING
 *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov
alwyn.lansing@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, <br><br> Plaintiffs, <br><br> v. <br><br> Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, <br><br> Defendants. | CV-21-119-M-DWM <br><br> **AFFIDAVIT OF ANGIE McLAUGHLIN** |

I, Angie McLaughlin, being first duly sworn upon her oath, state as follows based on my personal knowledge:

1.      I am Administrative Officer for Montana Secretary of State Christi Jacobsen.

2.      On October 14, 2021, Plaintiffs' summons and a copy of the complaint were delivered via process server to the Secretary of State's office.  I received the summons and complaint on behalf of the office.

3.      Exhibit 1 is a true and accurate copy of the summons and complaint as served on Secretary of State Jacobsen in this matter on October 14, 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _November 3, 2021_

_Angie McLaughlin_
Angie McLaughlin

Subscribed and sworn to before me this 3rd day of November, 2021.

(NOTARIAL SEAL)

SUSAN B. AMES
NOTARIAL
SEAL
STATE OF MONTANA

SUSAN B. AMES
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
September 20, 2023

Printed Name: _Susan B Ames_

AFFIDAVIT OF ANGIE MCLAUGHLIN | 2

## CERTIFICATE OF SERVICE

I hereby certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated:   November 3, 2021          /s/ *Brent Mead*
                                   BRENT MEAD

# Exhibit 1

Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
*Motion for Pro Hac Vice Forthcoming*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, <br><br> Plaintiffs, <br><br> v. <br><br> Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, <br><br> Defendants. | Case No. CV-21-119-M-DWM <br><br> PRAECIPE |

TO PROCESS SERVER IN THE CAPTIONED MATTER:

Please serve a copy of the Summons, and Complaint upon Christi Jacobsen, the Montana Secretary of State at her office in the State Capital building, Helena, MT and make your return to Plaintiffs' counsel at the address, above.

Dated this 13ᵗʰ day of October, 2021

Peter Michael Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, MT 59624
(406) 442-8670
*Attorney for Plaintiffs*

Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
403-442-8670
mike@meloylawfirm.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

Attorneys for Plaintiffs
*Motion for Pro Hac Vice Forthcoming

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
| Plaintiffs, | Case No.   CV-21-119-M-DWM |
| v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

TO: Christi Jacobsen, in her official capacity as Montana Secretary of State.

PLEASE TAKE NOTICE:

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address is:

Peter Michael Meloy,
MELOY LAW FIRM,
P.O. Box 1241,
Helena, MT 59624

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Dated:    10/12/21

_____
Chief Clerk of Deputy Clerk of Court

Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloynwfirm.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
*Motion for Pro Hac Vice Forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Pairitti,<br><br>    Plaintiffs,<br><br>    v.<br><br>Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices,<br><br>    Defendants. | Case No.   CV-21-119-M-DWM |

TO: Christi Jacobsen, in her official capacity as Montana Secretary of State.

PLEASE TAKE NOTICE:

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address is:

Peter Michael Meloy,
MELOY LAW FIRM,
P.O. Box 1241,
Helena, MT 59624

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



*CLERK OF COURT*

Dated:     10/12/21

_____
Chief Clerk of Deputy Clerk of Court

Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mixe@me oylawfirm.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

> *Attorneys for Plaintiffs*
> *Motion for Pro Hac Vice Forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Mateo Patriffi, | |
|     Plaintiffs, | Case No. |
| v, | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
|     Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs MONTANA DEMOCRATIC PARTY, MONTANANS FOR

1

TESTER, and MACEE PATRITTI, by and through their undersigned counsel, file this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF against Defendants CHRISTI JACOBSEN, in her official capacity as the Montana Secretary of State (the "Secretary"), and JEFFREY MANGAN, in his official capacity as the Montana Commissioner of Political Practices (the "Commissioner"), and allege as follows:

## NATURE OF THE CASE

1.      The 2020 general election saw Montana's highest voter turnout rates in nearly 50 years. Montanans voted in record numbers, with over 80 percent of registered Montana voters casting a ballot.

2.      This record voter participation was propelled by a surge in turnout among Montana's young voters. In 2020, the number of Montanans between the age of 18 and 29 who cast a ballot increased nearly 40 percent from the 2016 presidential election.

3.      Turnout among young voters in Montana has been rapidly on the rise over the last few years. During the 2018 midterm elections, 42 percent of young voters cast a ballot, up from less than 18 percent of young voters in the 2014 midterm elections.

4.      Rather than celebrate this laudable increase in youth participation, the Montana Legislature chose instead to pass a suite of voter-suppression laws targeting

young voters and limiting their access to the franchise. Among the bills passed during the state's most recent legislative session were measures that eliminated Montana's longstanding tradition of election day voter registration (House Bill 176) and limited the use of student ID cards as a form of voter identification (Senate Bill 169).

5.     This lawsuit challenges another one of those bills, Senate Bill 319 ("SB 319"), which imposes arbitrary, vague, and onerous restrictions on the rights of college students to undertake important political organizing efforts, engage in core political speech, and otherwise participate fully in the political process.

6.     Among other things, SB 319 prohibits any political committee—including student organizations—from directing, coordinating, managing, or conducting any "voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or voter turnout efforts for a federal, state, local, or school election held in a residence hall, dining facility, or athletic facility operated by a public postsecondary institution." SB 319, 67th Leg., Reg. Sess. § 21(1) (Mont. 2021) (the "Student Organizing Ban").

7.     The Student Organizing Ban is a surgical attack on the successful organizing efforts and increased political power of Montana's youngest voters. By targeting only and exactly residence halls, dining facilities, and athletic facilities, the Legislature took aim at and is now preventing young, newly enfranchised Montanans

3

from participating fully in the political process. Not only does the Student Organizing Ban prevent political committees from reaching college students in the areas of campus where their efforts are likely to be the most fruitful, it also prohibits college students from engaging in core political speech—including organizing efforts—in conjunction with any political committee.

8.     Plaintiffs bring this action challenging the Student Organizing Ban as unconstitutional under the First, Fourteenth, and Twenty-Sixth Amendments.[1]

## JURISDICTION AND VENUE

9.     Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

10.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under

---

[1] Senate Bill 319 is also subject to a challenge in Montana state court, where plaintiffs have challenged several aspects of the bill, including the Student Organizing Ban, under both the First Amendment and multiple provisions of the Montana Constitution. See Compl., Forward Mont. et al. v. Montana et. al., Case No. ADV-21-611 (Mont. Dist. Ct. June 1, 2021). In that proceeding, the court granted a preliminary injunction enjoining the enforcement of Senate Bill 319 for the pendency of that litigation. See Prelim. Inj. Order, Forward Mont. et al. v. Montana et al., Case No. ADV-2021-611 (Mont. Dist. Ct. July 1, 2021). That case is, however, pending; there has been no final resolution regarding the enforceability or constitutionality of the Student Organizing Ban. Not only are Plaintiffs here not parties to that proceeding, they raise distinct and additional claims for injuries to themselves, and they seek right-entitling them to relief from this Court.

4

the Constitution and laws of the United States and involve the assertion of deprivations, under color of state law, of rights under the U.S. Constitution.

1. This Court has personal jurisdiction over Defendants, who are sued in their official capacities.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, inter alia, a substantial part of the events that gave rise to Plaintiffs' claims occurred and will occur in this judicial district.

3. This Court has the authority to enter declaratory and injunctive relief under Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

The MONTANA DEMOCRATIC PARTY ("MDP") is a political party established pursuant to Mont. Code Ann. § 13-38-101 *et seq.* It meets the broad definition of a "political committee" falling under SB 319's restrictions. *See* Mt. Code § 13-1-101. Its mission is to elect Democratic Party candidates in local, statewide, and federal elections within the state of Montana. MDP works to accomplish its mission by educating, mobilizing, assisting, and turning out voters throughout the state. These activities include supporting Democratic Party candidates in state and federal and local elections through fundraising and organizing; protecting the legal rights of voters and ensuring that all voters have a meaningful opportunity to participate in Montana. MDP has thousands of members and

5

constituents from across the state, including college students in Montana and Montanans who regularly support candidates affiliated with the Democratic Party and will register and vote in future elections. MDP has expended millions of dollars to persuade and mobilize voters to support candidates up and down the ballot who affiliate with the Democratic Party in Montana. MDP again intends to make substantial expenditures to support Democratic candidates in the 2022 election and in future elections.

15.     Among MDP's activities have been significant efforts to register and mobilize voters on college campuses, including by retaining staff whose responsibilities specifically include campus organizing. The Student Organizing Ban directly harms MDP in three ways. First, it prohibits MDP from engaging in core political speech protected by the First Amendment, targeting MDP's constitutionally containing speech designed to influence the voters in an election. Second, it inflicts a competitive injury by frustrating MDP's mission and efforts to elect Democratic candidates in Montana by suppressing the access of young voters, which tend to support Democratic candidates, to the franchise. Third, due to the Student Organizing Ban, which prohibits MDP from registering and mobilizing voters in highly efficient areas on college and university campuses such as dorms, dining halls, and near polling places, MDP will inevitably have to dedicate more staff to voter registration and mobilization on campus in order to reach the same number of

potential voters, diverting both staff and monetary resources away from other mission-critical efforts.

16.    MDP's members, including thousands of college students in Montana, are also injured by the Student Organizing Ban as it violates their First Amendment free speech rights and surgically targets the right of college students to vote on the basis of their age in violation of the Twenty-Sixth Amendment.

17.    Plaintiff MONTANANS FOR TESTER is the principal campaign committee of Senator Jon Tester. It meets the broad definition of a "political committee" sitting under SB 319's restrictions. *See* Mont. Code Ann. § 13-1-101(31)(a). Its mission is to support the election and re-election of Jon Tester to the United States Senate. In furtherance of this mission, Montanans for Tester expends millions of dollars to educate, mobilize, assist, and turn out voters throughout the state of Montana, including voters on college campuses.

18.    The Student Organizing Ban injures Montanans for Tester in three ways. First, it prohibits Montanans for Tester from engaging in core political speech protected by the First Amendment, targeting Montanans for Tester's communications or making speech designed to influence the voters in an election. Second, it imposes a competitive injury by frustrating Montanans for Tester's mission to support the election of Jon Tester to the United States Senate in Montana by suppressing the votes of young voters, who tend to tend to support Democratic

7

candidates, to the franchise. Third, due to the Student Organizing Ban—which prohibits Montanans for Tester from registering and mobilizing voters in high-traffic areas of college and university campuses such as dorms, dining halls, and athletic facilities—Montanans for Tester will inevitably have to dedicate more staff to voter registration and mobilization on campus in order to reach the same number of potential voters, diverting both staff and monetary resources away from other mission-critical efforts.

19. Indeed, the efforts of Montanans for Tester and MDP to register young voters in 2018 provide a particularly poignant example of the inevitable impact of the Student Organizing Ban. Prior to the 2018 election, Montanans for Tester—working with MDP—registered over 3,000 new voters on college campuses through a focus on voter registration in high-traffic campus areas such as dorms and dining halls. The Student Organizing Ban would make such efforts illegal.

20. Plaintiff MACEE PATRITTI is a resident of, and registered voter in, Jefferson County, Montana. She is 19 years old and a freshman at the University of Montana. Ms. Patritti is active in politics and was a student intern for the Montana Democratic Party during the 2020 election. As part of her responsibilities as an intern, Ms. Patritti went onto the campus of Montana Technological University in Butte, Montana, to register students to vote, including in facilities such as dining halls. But for the Student Organizing Ban, Ms. Patritti would seek to conduct the

8

same activities again in coordination with a political committee such as MDP or Montanans for Tester. These activities would now be prohibited by the Student Organizing Ban, injuring Ms. Parini by restricting her ability to engage in core political expression protected by the First Amendment. The Student Organizing Ban further injures Ms. Parini by abridging her right to vote due to her age in violation of the Twenty-Sixth Amendment.

Defendant CHRISTI JACOBSEN is the Secretary of State of Montana and is named as a Defendant in her official capacity. The Secretary is Montana's chief election officer, vesting her with the authority "to obtain and maintain uniformity in the application, operation, and interpretation of the election laws other than those in Title 13, chapters 35, 36, or 37." Mont Code Ann. § 13-1-201.

Defendant JEFFREY MANGAN is the Montana Commissioner of Political Practices and is named as a Defendant in his official capacity. The Commissioner is charged with "investigating all of the alleged violations of the election laws contained in [chapter 35 of this title or [chapter 37] and in conjunction with the county attorney is responsible for enforcing these election laws." Mont Code Ann. § 13-37-111(1). This includes, among other things, the regulation of expenditures by political committees, id. 13-37-229, and the regulation of election materials distributed by political committees, id. 13-35-225.

## STATEMENTS OF FACTS AND LAW

23.    For years, Montana has been a leader in administering secure and accessible elections. The record-breaking turnout that Montana saw in the 2020 general election—especially among young voters—is evidence that when it is easier to vote more people vote. And the increased participation of young voters, in particular, was striking, as a 70% more Montanans between the age of 18 and 29 cast ballots   compared to the 2016 presidential election. In response, the Montana Legislature began to dismantle a number of the procedures and practices that made it easier for young Montanans to participate in the political process.

24.    And the Montana Legislature did not stop at voting procedures. In the wake of successful organizing and mobilization efforts by a number of organizations, including MTP and Montanans for Tester, the Legislature passed the Student Organizing Ban with the intent to hamstring political committees aimed at increasing the engagement of college students across Montana.

25.    The Legislature used a series of rare procedural maneuvers to transform SB 319 from what was originally a pure campaign finance bill to one with profound implications for the free speech rights of Montana's college students.

26.    State Senator Greg Hertz introduced SB 319 on February 19, 2021, as a campaign finance bill. The substance of the bill related entirely to

campaign finance regulations—specifically, the use of and reporting requirements for joint fundraising committees.

77. On the day Senator Herz introduced the bill, it was referred to the Senate's State Administration Committee. The bill received a hearing on February 26, 2021, passed out of the State Administration Committee on March 1, 2021, and passed out of the Senate entirely on March 2, 2021.

When SB 319 reached the Montana House of Representatives, it was referred to the House's State Administration Committee. The bill received a hearing in the House on March 17, 2021, passed out of the State Administration Committee without any changes on March 23, 2021, and was returned to the Senate—as amended—on April 6, 2021.

After sitting on SB 319 for more than two weeks, the Senate rejected the House's amendments on April 23, 2021.

It is the Montana Legislature's general practice to resolve any discrepancies between two versions of a bill using a conference committee, composed of three members of the House and three members of the Senate. The conference committee's work is limited to accepting, rejecting, or amending the disputed amendments.

If a conference committee fails to reconcile the disputed amendments, a second, free conference committee can convene to salvage the bill.

11

32.    A free conference committee has a broader mandate than a typical conference committee and is empowered to consider and adopt any amendment within the scope and title of the bill, even if such an amendment was not included in either chamber's version of the original bill.

33.    In an unusual procedural move, the Legislature never appointed a conference committee to resolve the discrepancies between the House and Senate version of SB 319. Instead, in the last days of the legislative session, the Legislature sent the bill directly to a free conference committee.

34.    On April 27, 2021, the free conference committee convened to consider proposed amendments to SB 319.

35.    During a closed-door meeting that lasted just under eighteen minutes, the members of the free conference committee adopted four amendments that fundamentally altered the scope and substance of SB 319.

36.    The free conference committee did not seek or allow public comment on the amendments, nor were they subject to the scrutiny of the relevant House or Senate committees.

37.    The most consequential of these amendments, the Student Organizing Ban (which is found in Section 21 of SB 319), prohibits political committees from directing, coordinating, managing, or conducting any "voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or

12

voter turnout efforts for a federal, state, local, or school election inside a residence hall, dining facility, or athletic facility operated by a public postsecondary institution." SB 319 § 31(1).

84.    The Student Organizing Ban is designed to limit the ability of newly-enfranchised Montana voters to fully exercise the franchise by limiting the information available to them and by stopping them from engaging in constitutionally protected political speech on college campuses.

85.    In passing the Student Organizing Ban, State Senator Steve Fitzpatrick said that he had "no problem if kids vote," but he wanted to protect them from being "hijacked" by "really activist causes."

86.    In addition to its problematic purpose, the Student Organizing Ban will chill constitutionally protected speech far outside the activities specifically enumerated in the law.

87.    For example, the Student Organizing Ban fails to provide any guidance as to what a "voter identification effort" means. The possibilities cover a range of constitutionally protected activity, from commonplace election-related undertakings like door-knocking and one-on-one advocacy, to information about how to acquire

13

sufficient identification to cast a ballot, to conversations about candidates, issues, and initiatives supported or opposed by a particular political committee.

42. Moreover, although the Student Organizing Ban purports to allow in-person organizing efforts provided the activity is undertaken "at [an] individual's exclusive initiative," SB 319 § 21(2), neither SB 319 nor the Montana Election Code defines precisely what it means to undertake such activities at an "individual's exclusive initiative."

43. The Student Organizing Ban would prohibit any college student who lives in or regularly eats in a dining hall from undertaking or participating in any of the activities prohibited by the Student Organizing Ban if that student undertakes those organizing activities with any political committee. Put another way, the Student Organizing Ban prohibits students from engaging in constitutionally protected political and campaign-related speech in the place they call home.

44. Montana's definition of a "political committee" encompasses a broad range of political and civil rights organizations, see Mont. Code Ann. § 13-1-101(30), and the Student Organizing Ban will significantly hamper student-organizing efforts by groups across Montana.

45. And, Montana law does not exempt student groups who meet the definition of a "political committee" from the rules and regulations governing such organizations, and because an organization becomes an "incidental political

14

committee" if it makes a single expenditure supporting or opposing a candidate or

ballot initiative, the Student Organizing Ban will have significant consequences for

any student group that choose to take a stand on the most important political and

social questions of the era. Mont. Code Ann. § 13-1-101(23).

The risk of unconstitutional chilling is particularly pronounced because

of the steep penalties that accompany a violation of the Student Organizing Ban.

Any publication or action that violates the Student Organizing Ban is subject to a

"civil penalty . . . of $500 for each violation" and "[e]ach day of a continuing violation

constitutes a separate violation." BR 319 § 21(4).

The university's Student Organizing Ban violates the First Amendment's

guarantee of free speech by unlawfully suppressing political speech. And, because it does

so by unlawfully and intentionally attempt to suppress the voting power of college

students, the university also violates the Twenty Sixth Amendment.

## CLAIMS FOR RELIEF

## COUNT I

First Amendment and the Fourteenth Amendment
U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. §
2202
Restriction on Core Political Speech

Plaintiff MTP, Montanans for Tester, and Macee Patritti reallege and

incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

15

49.    The First Amendment, by way of the Fourteenth Amendment, bars Montana from abridging the right to free expression. The right is at its most protect[...] when the speech at stake is political, serving "to ensure that the individual citiz[...] can effectively participate in and contribute to our republican system of self-govern[...]." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 604 (1982).

50.    [...] Student Organizing Ban meets the First Amendment at its apogee. Mont[...] has abridged Pla[...]iffs' rights to "participate in and contribute to" our system [...] government by [...]ing "political committees" like MDP and Montanans for [...] [...] coordinat[ing], manag[ing], or conduct[ing] any voter ident[...] [...] registration drives, signature collection efforts, ballot coll[...] [...] efforts for a federal, state, local, or school election in [...] [...] facility or athletic facility operated by" the Montana S[...] [...] § 21[...]. It has also unconstitutionally restricted [...] Pla[...]iff Magee Patriti to associate with organizations s[...] [...] [...] Foster in undertaking these expressive acts.

[...] [...] law governing "the mechanics of the electoral pr[...] [...] regulation of pure speech," targeting "only those" [...] [...] designed to influence the voters in an election." *M[...]* [...] 514 U.S. 334, 345 (1995). And it does so on c[...]ge cam[...] [...] long recognized as open to free and robust expression. *See*

16

*Widmar v. Vincent*, 454 U.S. 263, 267 n.5 (1981) ("The college classroom with its surrounding environs is peculiarly 'the marketplace of ideas.'").

52.    The Student Organizing Ban singles out the voting-related expression of political candidates—and those who work with them—for regulation. Voter registration, voter turnout, and signature collection efforts constitute "the type of interactive communication concerning political change that is appropriately described as core political speech.'" *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988), such as when organizations like MDP and Montanans for Tester express the importance of voting by contact with voters with whom they share common goals, so the court therefore faced not "with an ordinary electoral regulation" but rather one that targets and restricts political expression.

[       ] precisely those activities barred by Montana to [       ] voting and to facilitate signature collection for ballot [       ] those with whom they share a common goal. For [       ] will spend in the future, substantial resources in efforts [       ] Montana's college campuses. As a result of these [       ] thousands of young college students whose First [       ] by SB 319. Montanans for Tester has similarly [       ] future college campuses, registering 3,000 voters on

17

college campuses alone in the lead up to the 2018 election. And Plaintiff Macee
Pauitti has devoted her time to assist in these efforts on Montana's campuses and
pl... to d... so in the future.

5... The Supreme Court and the lower federal courts have explained that
th.. .... a... .. .titutes quintessential political speech. *See, e.g., Meyer*, 486 U.S. at
421-22 (explaining that discussions with "potential signatories" constitute core
po'itical speech" be ause they will at least entail "persuad[ing] them that the matter
is one des...ving ... the public's scrutiny and debate that would attend its consideration
b. ... ... ... ."); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 706 (N.D.
Ohio 2006). The ... .... nature of voter registration drives is obvious: they
con..y the ... .. ... that participation in the political process through voting is
important to ... ... and is a duty.").

5... The Student Organizing Ban, therefore, restricts Plaintiffs from
... ... ... .. ... topics core to First Amendment protections. This
b... ... .. ... ... g ... constitutional infringement. But the Student
O... ... ... ... ... by its effect on young voters.

... ... ... ... ... ... g college students (a population of newly-minted
v... ... ... ... ... is receptive to voter outreach and the political speech that
a... ... ... ... ... to voting-related expression where they are most
ea... ... ... ... ... ly describes the people, programs, and

18

places within its reach. it chills these same students from speaking on political issues as robustly as they would were the law not in place.

57. Because of these burdens. the Student Organizing Ban is subject to "exacting scrutiny" and may only be upheld if it is narrowly tailored to serve a compelling state interest. *McIntyre*, 514 U.S. at 347.

58. The Ban cannot withstand such scrutiny.

59. The State cannot demonstrate even a legitimate interest—let alone a compelling one—in imposing content-based restrictions on Plaintiffs' interactions with Montana's public college students. not least because of the roughshod way the Student Organizing Ban was passed. *see supra* ¶¶ 25-37.

And the Ban's architect *admitted* that its purpose was to chill speech, stating that the intention was to keep students from being "exploited" by "really aubitious people." State Senator Fitzpatrick essentially admitted that through the Ban Montana hoped to stifle speech that the government feared was too effective. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 580 (2011) ("The State has burdened a form of protected expression that it found too persuasive. At the same time, the State has left unburdened those speakers whose messages are in accord with its own views. This the State cannot do."). This makes it a content-based regulation and subject to and presumptively unconstitutional. *See, e.g., Reed v. Town of Gilbert*, 576 U.S. 155, 165 (2015) (holding, even if a law is facially content neutral,

19

it still will be deemed to be an unconstitutional content-based restriction if (1) it "cannot be justified without reference to the content of the regulated speech," *or* (2) it was "adopted by the government because of disagreement with the message [the speech] conveys") (quotation marks omitted); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (emphasizing that when determining whether a provision challenged under the First Amendment is content neutral, courts must consider "whether the government has adopted a regulation of speech *because of disagreement with the message it conveys*") (emphasis added); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 394 (1992) (holding that the mere "*possibility* that the [government] is seeking to handicap the expression of particular ideas . . . . would alone be enough to render the [law] presumptively invalid").

WW. When the State's articulated interests, they will not be sufficient to justify the Ban's infringement on Plaintiffs' right to free expression.

h. Plaintiffs therefore request injunctive and declaratory relief to prevent the State and its officials imposed by the Student Organizing Ban to Plaintiffs' rights to free speech guaranteed by the First Amendment.

## COUNT II

### Twenty-Sixth Amendment
### U.S. Const. Amend XXVI, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202
### Denial or Abridgement of the Right to Vote on Account of Age

63.     Plaintiffs reallege and incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

        The Twenty-Sixth Amendment to the U.S. Constitution provides in relevant part: "The right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by . . . any State on account of age." The goal of the Amendment "was not merely to empower voting by our youths but to affirmatively to encourage their voting, through the elimination of the barriers . . . so that their vigor and idealism could be brought within rather than remain outside lawfully constituted institutions." *Worden v. Mercer County Bd. of Elections*, 294 A.2d 233, 243 (N.J. Sup. 1972).

        The Twenty-Sixth Amendment guarantees young, qualified voters a substantive right to participate equally with other qualified voters in the electoral process. While written "to speak to only to age discrimination," it has "particular relevance for college-age voters who comprise approximately 50 per cent of all who vote in university communities." *Walgren v. Howes*, 482 F.2d 95, 101 (1st Cir. 1973) (finding a primary election date in September 1972).

As a result, laws that have the purpose, even in part, of denying or abridging the right to vote on account of age are unconstitutional. *League of Women Voters v. Detzner*, 314 F. Supp. 3d 1205, 1222–23 (N.D. Fla. 2018) (holding plaintiff was substantially likely to succeed on merits of Twenty-Sixth Amendment claim in challenge to restrictive state guidance "unexplainable on grounds other than age"); *C.L.B. Project-Common Cause v. Anderson*, 495 P.2d 220, 222 (Colo. 1972) (holding based on "[h]istory and reason" that the Twenty-Sixth Amendment's prohibition against denying the right to vote to anyone eighteen years or older by reason of age applies to the entire process involving the exercise of the suffrage franchise").

The Student Organizing Ban targets Montana's college-age voters with singling out restrictions to their political speech in college residence halls, dining facilities, and athletic facilities—but no other type of public building—in a transparent attempt to prevent political committees from reaching young, college-age citizens to urge and protect their college vote. In this way the Student Organizing Ban abridges the right to vote and unlawfully discriminates on the basis of age in violation of the Twenty-Sixth Amendment.

Injunctive and declaratory relief is needed to prevent the serious and continuing effects of the operation of the Student Organizing Ban on Plaintiffs' fundamental rights to vote.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

    a)    declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Student Organizing Ban violates the First, Fourteenth, and Twenty-Sixth Amendments to the United States Constitution;

    b)    enjoining the Secretary and Commissioner of Political Practices, under the authority granted to this Court by 28 U.S.C. §2202, from enforcing the Student Organizing Ban;

    c)    awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

    d)    granting such other and further relief as the Court deems just and proper.

Dated: October 12, 2021

                      Respectfully submitted,

                      /s/ *Peter Michael Meloy*

                      Peter M. Meloy
                      P.O. Box 1241
                      Helena, Montana 59624
                      406-442-8670
                      mike@meloylawfirm.com

                      Abha Khanna*
                      ELIAS LAW GROUP LLP
                      1700 Seventh Avenue, Suite 2100
                      Seattle, Washington 98101
                      Telephone: (206) 656-0177
                      akhanna@elias.law

Counsel for Plaintiffs
*Motion for Pro Hac Vice Forthcoming