AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
  *Lieutenant General*
DAVID M.S. DEWHIRST
  *Solicitor General*
BRENT MEAD
  *Assistant Solicitor General*
ALWIN LANSING
  *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov
alwyn.lansing@mt.gov

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | CV-21-119-M-DWM |
| Plaintiffs, | |
| v. | **AFFIDAVIT OF JEFF MANGAN** |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

I, Jeff Mangan, being first duly sworn upon his oath, state as follows based on my personal knowledge:

1. I am the Montana Commissioner of Political Practices.

2. On October 14, 2021, Plaintiffs' summons and a copy of the complaint were delivered via process server to the Commissioner of Political Practices office. I received the summons and complaint.

3. Exhibit 2 is a true and accurate copy of the summons and complaint as served on the Commissioner of Political Practices in this matter on October 14, 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _11-3-2021_

_____
Jeff Mangan

Subscribed and sworn to before me this _3_ day of November, 2021.
by _Jeff Mangan,_ State of Montana / Lewis & Clark County.

(NOTARIAL SEAL)

_Deborah L Belford_

Printed Name: _Deborah L Belford_

DEBORAH L. BELFORD
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
July 18, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated:  November 3, 2021          /s/ *Brent Mead*
                                  BRENT MEAD

# Exhibit 2

Peter M. Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
**Motion for Pro Hac Vice Forthcoming*

RECEIVED
2021 OCT 14 P 2: 36
COMMISSIONER OF
POLITICAL PRACTICES

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
| Plaintiffs, | Case No.   CV-21-119-M-DWM |
| v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

TO: Jeffrey Mangan, in his official capacity as Montana Commissioner of Political

Practices:

PLEASE TAKE NOTICE:

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address is:

Peter Michael Meloy,
MeLOY LAW FIRM,
P.O. Box 1241,
Helena, MT 59624

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Dated:      10/12/21

_____
Chief Clerk of Deputy Clerk of Court

Peter M. Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
*Motion for Pro Hac Vice Forthcoming*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
| Plaintiffs, | Case No. |
| v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs MONTANA DEMOCRATIC PARTY, MONTANANS FOR

1

TEST PR and MACPE PATRITTI, by and through their undersigned counsel, file the COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF against Defendant CHRISTI JACOBSEN, in her official capacity as the Montana Secretary of State (the "Secretary"), and JEFFREY MANGAN, in his official capacity as the Montana Commissioner of Political Practices (the "Commissioner"), and allege as follows:

## NATURE OF THE CASE

The 2020 general election saw Montana's highest voter turnout rates in nearly 20 years. Montanans voted in record numbers, with over 80 percent of registered voters casting a ballot.

2. This record voter participation was propelled by a surge in turnout among Montana's young voters. In 2020, the number of Montanans between the age of 18 and 29 who cast a ballot increased nearly 40 percent from the 2016 presidential election.

3. Turnout among young voters in Montana has been rapidly on the rise over the last few years. During the 2018 midterm elections, 42 percent of young voters cast a ballot, up from less than 18 percent of young voters in the 2014 midterm election.

4. Rather than celebrate this laudable increase in youth participation, the Montana Legislature chose instead to pass a suite of voter-suppression laws targeting

young voters and limiting their access to the franchise. Among the bills passed during the state's most recent legislative session were measures that eliminated Montana's longstanding tradition of election day voter registration (House Bill 176) and that prohibited the use of student ID cards as a form of voter identification (Senate Bill

This lawsuit challenges another one of those bills, Senate Bill 319 ("SB 319"), which imposes arbitrary, vague, and onerous restrictions on the rights of college students to undertake to pursue political organizing efforts, engage in core political speech, and otherwise participate fully in the political process.

As relevant here, SB 319 prohibits any political committee—including any student organization—from directing, coordinating, managing, or conducting any "voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or voter turnout efforts for a federal, state, local, or school election" in "a residence hall, dining facility, or athletic facility operated by a public postsecondary institution." SB 319, 67th Leg., Reg. Sess. § 21(1) (Mont. 2021) (the "Student Organizing Ban").

The Student Organizing Ban is a surgical attack on the successful organizing efforts and burgeoning political power of Montana's youngest voters. By targeting specifically residence halls, dining facilities, and athletic facilities, the Legislature aimed at and is in effect preventing young, newly enfranchised Montanans

from participating fully in the political process. Not only does the Student Organizing Ban prevent political committees from reaching college students in the areas ... campus where their efforts are likely to be the most fruitful, it also prohibits college students from engaging in core political speech—including organizing efforts ... in conjunction with any political committee.

... Plaintiffs bring this action challenging the Student Organizing Ban as ... ... under the First, Fourteenth, and Twenty-Sixth Amendments.[1]

## JURISDICTION **AND VENUE**

... ... brings this action under 42 U.S.C. §§ 1983 and 1988 to redress the ... under color of state law of rights secured by the United States Constitution.

... This Court has original jurisdiction over the subject matter of this action ... 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under

---

[1] Senate Bill 319 is also subject to a challenge in Montana state court, where plaintiffs have challenged several aspects of the bill, including the Student Organizing Ban, under both the First Amendment and multiple provisions of the Montana Constitution. *See* Compl., *Forward Mont. et al. v. Montana et. al.*, Case No. ADV-2021-611 (Mont. Dist. Ct. June 1, 2021). In that proceeding, the court granted a preliminary injunction enjoining the enforcement of Senate Bill 319 for the pendency of that litigation. *See* Prelim. Inj. Order, *Forward Mont. et al. v. Montana et. al.*, Case No. ADV-2021-611 (Mont. Dist. Ct. July 1, 2021). That case is still pending, but there has been no final resolution regarding the enforceability or constitutionality of the Student Organizing Ban. Not only are Plaintiffs here not parties to that proceeding, they raise distinct and additional claims for injuries to their own individual rights entitling them to relief from this Court.

the _____ and laws of the United States and involve the assertion of _____, under color of state law, of rights under the U.S. Constitution.

_____ personal jurisdiction over Defendants, who are sued in their _____.

_____ Court pursuant to 28 U.S.C. § 1391(b) because, _____ part of the events that gave rise to Plaintiffs' claims occurred and _____ in this State.

_____ authority to enter declaratory and injunctive relief _____ are 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

_____ DEMOCRATIC PARTY ("MDP") is a political _____ Code Ann. § 13-38-101 *et seq.* It meets the broad _____ filing under SB 319's restrictions. *See* Mt. _____ Democratic Party candidates in local, _____ the state of Montana. MDP works to _____ by educating, mobilizing, assisting, and turning out voters _____ activities include supporting Democratic Party _____ elections through fundraising and organizing; _____ ensuring that all voters have a meaningful _____ Montana. MDP has thousands of members and

constituents from across the state, including college students in Montana and Montanans who regularly support candidates affiliated with the Democratic Party and will register and vote in future elections. MDP has expended millions of dollars to mobilize and mobilize voters to support candidates up and down the ballot who affiliate with the Democratic Party in Montana. MDP again intends to make sure they will mobilize support Democratic candidates in the 2022 election and for future elections.

During MDP's activities have been significant efforts to register and mobilize voters on college campuses, including by retaining staff whose responsibilities particularly include campus organizing. The Student Organizing Ban harms MDP in three ways. First, it prohibits MDP from engaging in core political activity protected by the First Amendment, targeting MDP's core association activity speech designed to influence the voters in an election. Second, it injures MDP's legal injury by frustrating MDP's mission and efforts to mobilize and register voters. MDP's return by suppressing the access of young voters, who tend to support Democratic candidates, to the franchise. Third, due to the Student Organizing Ban's prohibits MDP from registering and mobilizing voters at high-traffic areas on college and university campuses such as dorms, dining halls cafeterias. That is, MDP will inevitably have to dedicate more staff to voter registration and mobilization on campus in order to reach the same number of

potential voters, diverting both staff and monetary resources away from other mission-critical efforts.

MTP's members, including thousands of college students in Montana, are injured by the Student Organizing Ban as it violates their First Amendment rights because it specifically targets the right of college students to vote on the basis of age in violation of the Twenty-Sixth Amendment.

Plaintiff MONTANANS FOR TESTER is the principal campaign committee of Senator Jon Tester. It meets the broad definition of a "political committee" as set out in MTP's resolutions. *See* Mont. Code Ann. § 13-1-101(31). Its mission is to support the election and re-election of Jon Tester to the United States Senate. In furtherance of his mission, Montanans for Tester expends money and resources to educate, mobilize, assist, and turn out voters throughout the state of Montana, including those on college campuses.

The Student Organizing Ban injures Montanans for Tester in three ways. First, it prohibits Montanans for Tester from engaging in core political speech protected by the First Amendment, targeting Montanans for Tester's constitutional activity expressly designed to influence the voters in an election. Second, it compounds the MTP's injury by frustrating Montanans for Tester's efforts to re-elect Jon Tester to the United States Senate in Montana by suppressing the votes of young voters, who tend to tend to support Democratic

candidates to the franchise. Third, due to the Student Organizing Ban—which prohibits Montanans for Tester from registering and mobilizing voters in high-traffic areas of college and university campuses such as dorms, dining halls, and athletic facilities, Montanans for Tester will inevitably have to dedicate more staff to voter registration and mobilization on campus in order to reach the same number of potential voters, diverting both staff and monetary resources away from other mobilization activities.

The inability of Montanans for Tester and MDP to register young voters is a particularly poignant example of the inevitable impact of the Student Organizing Ban. Prior to the 2018 election, Montanans for Tester—was able to register over 2,000 new voters on college campuses through a sustained outreach in high-traffic campus areas such as dorms and dining halls. The Student Organizing Ban would make such efforts illegal.

Plaintiff TITANA PARKER ("PARKER") is a resident of, and registered voter in, Jefferson County, Montana. She is 19 years old and a freshman at the University of Montana. She attends all her college politics and was a student intern for the Montana Democratic Party during the 2020 election. As part of her responsibilities as an intern, she canvassed voters on the campus of Montana Technological University in Butte, Montana, registering students to vote, including in facilities such as dining halls. Absent the Student Organizing Ban, Ms. Parker would seek to conduct the

same activities again in coordination with a political committee such as MDP or Montanans for Tester. These activities would now be prohibited by the Student Organizing Ban, injuring Ms. Paritti by restricting her ability to engage in core political expression protected by the First Amendment. The Student Organizing Ban also injures Ms. Paritti by abridging her right to vote due to her age in violation of the Twenty-Sixth Amendment.

9.      Defendant CHRISTI JACOBSON is the Secretary of State of Montana and is named as a Defendant in her official capacity. The Secretary is Montana's chief election officer serving now with the authority "to obtain and maintain uniformity in the application, operation, and interpretation of the election laws other than those subject to Title 13, chapters 35, 36, or 37." Mont Code Ann. § 13-1-201.

10.     Defendant JEFFREY MANGAN is the Montana Commissioner of Political Practices and is named as a Defendant in his official capacity. The Commissioner has primary responsibility "investigating all of the alleged violations of the election laws involving . . . [chapter 35 of this title or [chapter 37] and in conjunction with the county attorney, the responsibility for enforcing these election laws." Mont Code Ann. § 13-37-111. This includes, among other things, the regulation of election communications by political committees, id. 13-37-229, and the regulation of election communications by political committees, id. 13-35-225.

## STATEMENTS OF FACTS AND LAW

For years, Montana has been a leader in administering secure and accessible elections. The record-breaking turnout that Montana saw in the 2020 general election—especially among young voters—is evidence that when it is easier to vote, more people vote. And the increased participation of young voters, in particular—turning out over 40% more Montanans between the age of 18 and 29 cast a ballot as compared to the 2016 presidential election. In response, the Montana Legislature sought to dismantle a number of the procedures and practices that made it easier for young Montanans to participate in the political process.

But the Montana Legislature did not stop at voting procedures. In the wake of successful registration and mobilization efforts by a number of organizations including MontPIRG and Montanans for Tester, the Legislature passed the SB 319 Regulations with an intent to hamstring political committees aimed at increasing the engagement of college students across Montana.

The Legislature used a series of rare procedural maneuvers to transform SB 319 from a relatively narrow campaign finance bill to one with profound implications for the political rights of Montana's college students.

Republican Chairman Greg Hertz introduced SB 319 on February 19, 2021, as the "Clean Campaign Bill." The substance of the bill related entirely to

campaign finance regulations—specifically, the use of and reporting requirements for joint fundraising committees.

27.   On the day Senator Herz introduced the bill, it was referred to the Senate Judiciary Administration Committee. The bill received a hearing on February 2?, 20?? passed out of the State Administration Committee on March 1, 2021, and pr?????? ??? ??? ?? ????? ??????y on March 2, 2021.

??   When SB 319 ??ched the Montana House of Representatives, it was ??? ??? ?? ??? ??? ??? ?? ??? Administration Committee. The bill received a hearing in ??? ??? ?? ?????? ??? 2021 passed out of the State Administration Committee ??? ??? ??? ?? March 23, 2021, and was returned to the Senate—as am????? ?? ??? ?? 2?21

??   ?? ??? ?? ?????? ?? ?? SB 319 for more than two weeks, the Senate r?j???? ??? ?? ? ?? ?? ??? ??? on April 23, 2021.

??   ?? ?? ??? ????? Legislature's general practice to resolve any d??p??? ?? ?? ? ?? ??? ??? ??? of a bill using a conference committee, c??? ?? ??? ?? ??? ??? ?? ??? ?? ??? House and three members of the Senate. The c??? ??? ?? ??? ??? ?? ?? ?? limited to accepting, rejecting, or amending the d??p??? ??? ??? ???

??   ?? ?? ??? ??? ?? ??? ?? fails to reconcile the disputed amendments, a ?? ?? ?? ??? ?? ? ?? committee can convene to salvage the bill.

82.   A free conference committee has a broader mandate than a typical conference committee and is empowered to consider and adopt any amendment within the scope and title of the bill, even if such an amendment was not included in either chamber's version of the original bill.

83.   In an unusual procedural move, the Legislature never appointed a conference committee to resolve the discrepancies between the House and Senate version of SB 319. Instead, in the last days of the legislative session, the Legislature sent both SB 319 and SB 319 to a free conference committee.

84.   On April 27, 2021, the free conference committee convened to consider potential amendments to SB 319.

85.   During a closed-door meeting that lasted just under eighteen minutes, the majority of the free conference committee adopted four amendments that fundamentally altered the scope and substance of SB 319.

86.   The free conference committee did not seek or allow public comment on these amendments, nor were they subject to the scrutiny of the relevant House or Senate committees.

87.   One substantial of these amendments, the Student Organizing Ban (codified as in Section 21 of SB 319), prohibits political committees from distributing, ordering, managing, or conducting any "voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or

12

vote _____ ____ for a federal, state, local, or school election inside a residence hall, dining facility, or athletic facility operated by a public postsecondary institution." ___ ___ § 2(4).

__. The Student Organizing Ban is designed to limit the ability of newly-enfranchised Montana voters to fully exercise the franchise by limiting the information available to them and by stopping them from engaging in _____ protected political speech on college campuses.

___. In _____ of the Student Organizing Ban, State Senator Steve _____ _____ that he had "no problem if kids vote," but he wanted to protect them from being "exploited" by "really activist causes."

___. In _____ to its problematic purpose, the Student Organizing Ban will _____ _____ protected speech far outside the activities specifically _____.

___. __ _____ the Student Organizing Ban fails to provide any guidance as _____ ___ "_____ identification effort" means. The possibilities cover a range of _____ _____, from a commonplace election-related undertakings like ____ _____ ___ ___-on-one advocacy, to information about how to acquire

su_____ identification to cast a ballot, to conversations about candidates, issues,
and _____ supported or opposed by a particular political committee.

_____ more, _____ although the Student Organizing Ban purports to allow in-
_____ _____ efforts provided the activity is undertaken "at [an] individual's
_____ _____ __ 77-13-1 __ 2'(2), neither SB 319 nor the Montana Election Code
_____ _____ _____ it wants to undertake such activities at an "individual's
_____ _____ _____.

___. The Student Organizing Ban would prohibit any college student who
lives in _____ or regularly eats in a dining hall from undertaking or participating in
an _____ _____ _____ by the Student Organizing Ban if that student
un_____ __ ___ in conjunction with any political committee. Put another way, the
Student Organizing Ban _ bars students from engaging in constitutionally protected
activity, and _____ political speech, in the place they call home.

_____ _____ _____'s definition of a "political committee" encompasses
a ____ _____ and civil rights organizations, see Mont. Code Ann. § 13-
1-___ __, the Student Organizing Ban will significantly hamper student-organizing
ef_____ _____ and _____.

___ ___ __ __ _____ law does not exempt student groups who meet the
d_____ __ "political committee" from the rules and regulations governing such
organizations __ __ _____ ___ organization becomes an "incidental political

could … makes a single expenditure supporting or opposing a candidate or

ball… , the Student Organizing Ban will have significant consequences for

a … … group … chooses to take a stand on the most important political and

so… …sues … Mont. Code Ann. § 13-1-101(23).

… … individual … chilling is particularly pronounced because

o… … … … that … … a violation of the Student Organizing Ban.

An… … … … … … violates the Student Organizing Ban is subject to a

"… … $5,000 for each violation" and "[e]ach day of a continuing violation

c… … … … the offense." SB 319 § 21(4).

… … put simply, the Student Organizing Ban violates the First Amendment's

core prohibition against regulating and suppressing political speech. And, because it does

so … … … … … … … attempt to suppress the voting power of college

stu… … … … … … … violates the Twenty Sixth Amendment.

### CLAIMS FOR RELIEF

### COUNT I

#### First Amendment and Fourteenth Amendment
#### U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202
#### Restriction on Core Political Speech

… … … … Montanans for Tester and Macee Parituli reallege and

incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

... First Amendment, by way of the Fourteenth Amendment, bars Montana from abridging the right to free expression. The right is at its most ... when ... ... is political, serving "to ensure that the individual ... ... ... participate in and contribute to our republican system of self-g... ... ... *Brown v. Hartlage*, 456 U.S. 45, ...; *Bd. ... v. Super. Ct.*, 457 U.S. 596, 604 (1982).

... ... ... ... infringing harms ... the First Amendment at its apogee. M... ... ... ... ... ... rights to "participate in and contribute to" our s... ... ... ... ... ... forming "political committees" like MDP and Montanans f... ... ... ... "conduct[ing]" or "coordinat[ing], manag[ing], or conduct[ing] any voter i... ... ... ... ... ... ... ... drives, signature collection efforts, ballot c... ... ... ... ... ... ... ... for a federal, state, local, or school election in the residence halls, dining facility, or athletic facility operated by" the Montana State University System, Bylaws, SP 225 § 121.(1). It has also unconstitutionally restricted the ... right of individuals like Forward Montana, Patrick to associate with organizations s... ... MDP and so ... to ban them in undertaking these expressive acts.

... ... ... ... ... ... by governing "the mechanics of the electoral p... ... ... ... ... ... regulation of pure speech," targeting "only those" comm... ... ... ... ... making a ... designed to influence the voters in an election." *M... ... v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995). And it does so on c... ... ... ... ... ... ... ... ... to free and robust expression. *See*

_____ __ ___, 454 U.S. 263, 267 n.5 (1981) ("The college classroom with its surrounding environs is peculiarly 'the marketplace of ideas.'").

The _____ Organizing Ban singles out the voting-related expression of _____ _____ _____—and those who work with them—for regulation. Voter registration _____ _____ _____ and signature collection efforts constitute "the type of _____ _____ _____ for _____ political change that is appropriately _____. _____ _____ _____ _____ _____," *Meyer v. Grant*, 486 U.S. 414, 421-22 (1988), _____ _____ _____ like MDP and Montanans for Tester express the _____ _____ _____ _____ _____ with voters with whom they share common goals, _____ _____ _____ _____ _____. The state is therefore faced not "with an ordinary e _____ _____. _____ _____ _____ that targets and restricts political expression. *Id.* ___ ___ ___ ___ ___ 421-22.

_____ _____ _____'s engaged in precisely those activities barred by Montana to e _____ _____ _____ _____ of voting and to facilitate signature collection for ballot measures and _____ candidates with whom they share a common goal. For e _____ _____ MDP has _____ _____ and, in the future, substantial resources in efforts t _____ _____ _____ voters on Montana's college campuses. As a result of these e _____ _____ _____ likely lost the thousands of young college students whose First A _____ _____ rights were curtailed by SB 319. Montanans for Tester has similarly e _____ _____ _____ and, in the future, college campuses, registering 3,000 voters on

17

enough ballots as those in the lead up to the 2018 election. And Plaintiff Macee Barnhill has devoted her time to assist in these efforts on Montana's campuses and plans to do so in the future.

The Supreme Court and the lower federal courts have explained that this is a quintessential political speech. *See, e.g., Meyer*, 486 U.S. at 421 (explaining that discussions with "potential signatories" constitute core political speech and "at least entail '[persuading] them that the matter is one deserving of the public scrutiny and debate that would attend its consideration by [voters]"); *Project Vote v. Blackwell*, 455 F. Supp. 2d 694, 706 (N.D. Ohio 2006) ("The political nature of voter registration drives is obvious: they encourage others to participate in the political process through voting is inherently a communicative act.").

The Voter Registration Ban, therefore, restricts Plaintiffs from engaging in activities and expression core to First Amendment protections. This burden alone constitutes a grave constitutional infringement. But the Student Organizing Ban is made worse by its effect on young voters.

Plaintiffs, including young college students (a population of newly-minted voters), rely on these supportive voter outreach and the political speech that animates them. They do so across voting-related expression where they are most easily reached, and that approach arguably describes the people, programs, and

places within its reach, it chills these same students from speaking on political issues as freely as they would were the law not in place.

Because of these burdens, the Student Organizing Ban is subject to "strict scrutiny" and may only be upheld if it is narrowly tailored to serve a compelling government interest. *Id.*, 514 U.S. at 347

... that no measure will attend such scrutiny.

The state cannot demonstrate even a legitimate interest—let alone a compelling legitimate ... the ... -based restrictions on Plaintiffs' interactions ... at least because of the roughshod way the State ... *supra* ¶¶ 25–37.

... the State of Montana *admitted* that its purpose was to chill speech ... that the goal was to keep students from being "exploited" by ... essentially admitted that through ... this speech that the government feared was too effective ... *Snyder v. Phelps,* 564 U.S. 552, 580 (2011) ("The State has ... of expression that it found too persuasive. At the same time ... those speakers whose messages are in accord with its own views. This is the Constitution cannot do."). This makes it a content-based restriction and thus presumptively unconstitutional. *See, e.g., Reed v. Town of ...,* ... (2015) ("... even if a law is facially content neutral,

19

it will also be deemed to be an unconstitutional content-based restriction if (1) it "cannot be justified without reference to the content of the regulated speech," *or* (2) [it was adopted by] the government because of disagreement with the message [the speaker] conveys" (quotation marks omitted); *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (explaining that when determining whether a provision of a regulation of the First Amendment is content neutral, courts must consider "whether the government has adopted a regulation of speech *because of disagreement with the message it conveys*") (emphasis added); *see also R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 (1992) (holding that the mere "*possibility* that the [government] will engage in illicit suppression of particular ideas . . . . would ... [render a regulation] . . . [f]acially presumptively invalid'").

... students' interests, they will not be sufficient to justify infringement on Plaintiffs' right to free expression.

Plaintiffs seek injunctive and declaratory relief to prevent the ... infringement occasioned by the Student Organizing Ban to Plaintiffs' rights to free speech guaranteed by the First Amendment.

# COUNT II

## Twenty-Sixth Amendment
U.S. Const. Amend XXVI, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202
Denial or Abridgement of the Right to Vote on Account of Age

___. Plaintiffs realitige and incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

___. The Twenty-Sixth Amendment to the U.S. Constitution provides in relevant part, "the right of citizens of the United States, who are eighteen years of age or older, to vote shall not be denied or abridged by . . . any State on account of age." . . . "The Amendment was not merely to empower voting by our youths but . . . to encourage their transition to the voting, through the elimination of . . . so that their tremendous latent vigor and idealism could be brought within . . . and lawfully constituted institutions." *Worden v. A_____ __ _____ ___ __ F.2d 1333, 242 (N.L Sup. 1972).*

___. . . . Twenty-Sixth Amendment guarantees young, qualified voters a substantial . . . on equal footing with other qualified voters in the electoral process. While . . . prohibits only age discrimination," it has "particular . . . to ensure youth . . . who make approximately 50 per cent of all who vote . . . by this standard." *Walgren v. Howes,* 482 F.2d 95, 101 (1st Cir. . . . (citing 18 U.S.C. § 7917 § 825).

... As a result, laws that have the purpose, even in part, of denying or abridging the right to vote on account of age are unconstitutional. *League of Women Voters v. Detzner*, 314 F. Supp. 3d 1205, 1222–23 (N.D. Fla. 2018) (holding plaintiffs were substantially likely to succeed on merits of Twenty-Sixth Amendment claim challenging a restrictive state guidance "unexplainable on grounds other than age"); *Jolicoeur-Common Cause v. Anderson*, 495 P.2d 220, 228 (Cal. 1972) (holding based on "[h]istory and reason" that the Twenty-Sixth Amendment's "right" to vote against denying the right to vote to anyone eighteen years or older applies to the entire process involving the exercise of ... to vote ...).

... The Student Organizing Ban targets Montana's college-age voters with ... inhibited speech in college residence halls, dining facilities, ... or any other type of public building—in a ... prohibiting committees from reaching young, college-age ... voters. In this way the Student Organizing Ban ... purposefully discriminates on the basis of age in violation of ...

... emergency relief is needed to prevent the serious and ... Student Organizing Ban on Plaintiffs' fundamental right ...

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment:

a)   declaring, under the authority granted to this Court by 28 U.S.C. § 2201, that the Student Organizing Ban violates the First, Fourteenth, and Twenty-Sixth Amendments to the United States Constitution;

b)   enjoining the Secretary and Commissioner of Political Practices, under the authority granted to this Court by 28 U.S.C. §2202, from enforcing the Student Organizing Ban;

c)   awarding Plaintiffs their costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d)   granting such other and further relief as the Court deems just and proper.

Dated: October 12, 2021

Respectfully submitted,

/s/ Peter Michael Meloy

Peter M. Meloy
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

23

*Counsel for Plaintiffs*
**Motion for Pro Hac Vice Forthcoming*