AUSTIN KNUDSEN
Montana Attorney General
KRISTIN HANSEN
 *Lieutenant General*
DAVID M.S. DEWHIRST
 *Solicitor General*
BRENT MEAD
 *Assistant Solicitor General*
ALWIN LANSING
 *Assistant Attorney General*
215 North Sanders
P.O. Box 201401
Helena, MT 59620-1401
Phone: 406-444-2026
Fax: 406-444-3549
david.dewhirst@mt.gov
brent.mead2@mt.gov
alwyn.lansing@mt.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti,<br><br>Plaintiffs,<br><br>v.<br><br>Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices,<br><br>Defendants. | CV-21-119-M-DWM<br><br>**AFFIDAVIT OF ROCHELL STANDISH** |

I, Rochell Standish, being first duly sworn upon her oath, state as follows based on my personal knowledge:

1.      I am a Paralegal at the Montana Department of Justice, which is headed by the Montana Attorney General.

2.      On October 14, 2021, Plaintiffs' summonses and an incomplete copy of the complaint were delivered via process server to the Office of the Montana Attorney General.  I received the summonses and complaint on behalf of the office.

3.      Exhibit 3 is a true and accurate copy of the summonses and complaint as served on the Office of the Montana Attorney General in this matter on October 14, 2021.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>November 3, 2021</u>

Rochell Standish

Subscribed and sworn to before me this 3rd day of November, 2021.



LaRAY JENKS
NOTARY PUBLIC for the
State of Montana
Residing at Helena, Montana
My Commission Expires
January 12, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this date, an accurate copy of the foregoing document was served electronically through the Court's CM/ECF system on registered counsel.

Dated:   November 3, 2021           /s/ *Brent Mead*
                                    BRENT MEAD

# Exhibit 3

# SERVICE OF PROCESS

*(Do not sign any acknowledgement.)*

**Personal service by:** Brian Mook  **Date:** 10/14/2021

w/ Williams Investigations

**1.** Does the server have the original document?   Yes   (No)
**2.** Are other entities being served?   (Yes)   No

**3.** List: COPP (Jeff Mangan)

Christi Jacobsen

Peter M. Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
*\*Motion for Pro Hac Vice Forthcoming*

## UNITED STATES DISTRICT COURT
### DISTRICT OF MONTANA
### MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
| Plaintiffs, | Case No. CV-21-119-M-DWM |
| v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | PRAECIPE |
| Defendants. | |

TO PROCESS SERVER IN THE CAPTIONED MATTER:

Please serve a copy of the Summons, and Complaint upon the Montana Attorney General, Montana Department of Justice, 215 No. Sanders, Helena, MT 59601 and make your return to Plaintiffs' counsel at the address, above.

Dated this 13th day of October, 2021

Peter Michael Meloy
MELOY LAW FIRM
P.O. Box 1241
Helena, MT 59624
(406) 442-8670
*Attorney for Plaintiffs*

Peter M. Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
*\*Motion for Pro Hac Vice Forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
|     Plaintiffs, | Case No.  CV-21-119-M-DWM |
|     v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
|     Defendants. | |

TO: Christi Jacobsen, in her official capacity as Montana Secretary of State,

PLEASE TAKE NOTICE:

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address is:

Peter Michael Meloy,
MELOY LAW FIRM.
P.O. Box 1241,
Helena, MT 59624

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Dated:     10/12/21

*Annie Pulman*

Chief Clerk of Deputy Clerk of Court

Peter M. Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

*Attorneys for Plaintiffs*
*\*Motion for Pro Hac Vice Forthcoming*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
| Plaintiffs, | Case No.   CV-21-119-M-DWM |
| v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

TO: Jeffrey Mangan, in his official capacity as Montana Commissioner of Political

Practices

PLEASE TAKE NOTICE:

A lawsuit has been filed against you. Within 21 days after service of this summons on you (not counting the day you received it) you must serve on the plaintiffs an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address is:

Peter Michael Meloy,
MELOY LAW FIRM.
P.O. Box 1241,
Helena, MT 59624

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Dated:    10/12/21

Chief Clerk of Deputy Clerk of Court

Peter M. Meloy
**MELOY LAW FIRM**
P.O. Box 1241
Helena, Montana 59624
406-442-8670
mike@meloylawfirm.com

Abha Khanna*
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, Washington 98101
Telephone: (206) 656-0177
akhanna@elias.law

> *Attorneys for Plaintiffs*
> *\*Motion for Pro Hac Vice Forthcoming*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| Montana Democratic Party, Montanans for Tester, Macee Patritti, | |
| Plaintiffs, | Case No. |
| v. | |
| Christi Jacobsen, in her official capacity as Montana Secretary of State, Jeffrey Mangan, in his official capacity as Montana Commissioner of Political Practices, | |
| Defendants. | |

## <u>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF</u>

Plaintiffs   MONTANA   DEMOCRATIC   PARTY,   MONTANANS   FOR

1

TESTER, and MACEE PATRITTI, by and through their undersigned counsel, file this COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF against Defendants CHRISTI JACOBSEN, in her official capacity as the Montana Secretary of State (the "Secretary"), and JEFFREY MANGAN, in his official capacity as the Montana Commissioner of Political Practices (the "Commissioner"), and allege as follows:

## NATURE OF THE CASE

1.     The 2020 general election saw Montana's highest voter turnout rates in nearly 50 years. Montanans voted in record numbers, with over 80 percent of registered Montana voters casting a ballot.

2.     This record voter participation was propelled by a surge in turnout among Montana's young voters. In 2020, the number of Montanans between the age of 18 and 29 who cast a ballot increased nearly 40 percent from the 2016 presidential election.

3.     Turnout among young voters in Montana has been rapidly on the rise over the last few years. During the 2018 midterm elections, 42 percent of young voters cast a ballot, up from less than 18 percent of young voters in the 2014 midterm elections.

4.     Rather than celebrate this laudable increase in youth participation, the Montana Legislature chose instead to pass a suite of voter-suppression laws targeting

young voters and limiting their access to the franchise. Among the bills passed during the state's most recent legislative session were measures that eliminated Montana's longstanding tradition of election day voter registration (House Bill 176) and limited the use of student ID cards as a form of voter identification (Senate Bill 169).

5.      This lawsuit challenges another one of those bills, Senate Bill 319 ("SB 319"), which imposes arbitrary, vague, and onerous restrictions on the rights of college students to undertake important political organizing efforts, engage in core political speech, and otherwise participate fully in the political process.

6.      Among other things, SB 319 prohibits any political committee—including student organizations—from directing, coordinating, managing, or conducting any "voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or voter turnout efforts for a federal, state, local, or school election inside a residence hall, dining facility, or athletic facility operated by a public postsecondary institution." SB 319, 67th Leg., Reg. Sess. § 21(1) (Mont. 2021) (the "Student Organizing Ban").

7.      The Student Organizing Ban is a surgical attack on the successful organizing efforts and increased political power of Montana's youngest voters. By targeting only university residence halls, dining facilities, and athletic facilities, the Legislature made clear its intent: preventing young, newly enfranchised Montanans

3

from participating fully in the political process. Not only does the Student Organizing Ban prevent political committees from reaching college students in the areas of campus where their efforts are likely to be the most fruitful, it also prohibits college students from engaging in core political speech—including organizing efforts—in conjunction with any political committee.

8.      Plaintiffs bring this action challenging the Student Organizing Ban as unconstitutional under the First, Fourteenth, and Twenty-Sixth Amendments.[1]

## JURISDICTION AND VENUE

9.      Plaintiffs bring this action under 42 U.S.C. §§ 1983 and 1988 to redress the deprivation under color of state law of rights secured by the United States Constitution.

10.     This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under

---

[1] Senate Bill 319 is also subject to a challenge in Montana state court, where plaintiffs have challenged several aspects of the bill, including the Student Organizing Ban, under both the First Amendment and multiple provisions of the Montana Constitution. *See* Compl., *Forward Mont. et al. v. Montana et. al.*, Case No. ADV-2021-611 (Mont. Dist. Ct. June 1, 2021). In that proceeding, the court granted a preliminary injunction enjoining the enforcement of Senate Bill 319 for the pendency of that litigation. *See* Prelim. Inj. Order, *Forward Mont. et al. v. Montana et. al.*, Case No. ADV-2021-611 (Mont. Dist. Ct. July 1, 2021). That case is still pending, but there has been no final resolution regarding the enforceability or constitutionality of the Student Organizing Ban. Not only are Plaintiffs here not parties to that proceeding, they raise distinct and additional claims for injuries to their constitutional rights entitling them to relief from this Court.

the Constitution and laws of the United States and involve the assertion of deprivations, under color of state law, of rights under the U.S. Constitution.

11.    This Court has personal jurisdiction over Defendants, who are sued in their official capacities.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, *inter alia*, a substantial part of the events that gave rise to Plaintiffs' claims occurred and will occur in this judicial district.

13.    This Court has the authority to enter declaratory and injunctive relief under Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

14.    Plaintiff MONTANA DEMOCRATIC PARTY ("MDP") is a political party established pursuant to Mont. Code Ann. § 13-38-101 *et seq.* It meets the broad definition of a "political committee" falling under SB 319's restrictions. *See* Mt. Code 13-1-101(31). Its mission is to elect Democratic Party candidates in local, county, state, and federal elections within the state of Montana. MDP works to accomplish that mission by educating, mobilizing, assisting, and turning out voters throughout the state. These activities include supporting Democratic Party candidates in national, state, and local elections through fundraising and organizing; protecting the legal rights of voters; and ensuring that all voters have a meaningful opportunity to cast ballots in Montana. MDP has thousands of members and

5

constituents from across the state, including college students in Montana and Montanans who regularly support candidates affiliated with the Democratic Party and will register and vote in future elections. MDP has expended millions of dollars to persuade and mobilize voters to support candidates up and down the ballot who affiliate with the Democratic Party in Montana. MDP again intends to make substantial expenditures to support Democratic candidates in the 2022 election and in future elections.

15.    Among MDP's activities have been significant efforts to register and mobilize voters on college campuses, including by retaining staff whose responsibilities specifically include campus organizing. The Student Organizing Ban directly harms MDP in three ways. First, it prohibits MDP from engaging in core political speech protected by the First Amendment, targeting MDP's communications containing speech designed to influence the voters in an election. Second, it imposes a competitive injury by frustrating MDP's mission and efforts to elect Democratic candidates in Montana by suppressing the access of young voters, who tend to support Democratic candidates, to the franchise. Third, due to the Student Organizing Ban—which prohibits MDP from registering and mobilizing voters in high-traffic areas on college and university campuses such as dorms, dining halls, and athletic facilities—MDP will inevitably have to dedicate more staff to voter registration and mobilization on campus in order to reach the same number of

potential voters, diverting both staff and monetary resources away from other mission-critical efforts.

16.     MDP's members, including thousands of college students in Montana, are also injured by the Student Organizing Ban as it violates their First Amendment free speech rights and surgically targets the right of college students to vote on the basis of their age in violation of the Twenty-Sixth Amendment.

17.     Plaintiff MONTANANS FOR TESTER is the principal campaign committee of Senator Jon Tester. It meets the broad definition of a "political committee" falling under SB 319's restrictions. *See* Mont. Code Ann. § 13-1-101(31). Its mission is to support the election and re-election of Jon Tester to the United States Senate. In furtherance of this mission, Montanans for Tester expends millions of dollars to educate, mobilize, assist, and turn out voters throughout the state of Montana, including voters on college campuses.

18.     The Student Organizing Ban injures Montanans for Tester in three ways. First, it prohibits Montanans for Tester from engaging in core political speech protected by the First Amendment, targeting Montanans for Tester's communications containing speech designed to influence the voters in an election. Second, it imposes a competitive injury by frustrating Montanans for Tester's mission and efforts to elect Jon Tester to the United States Senate in Montana by suppressing the access of young voters, who tend to tend to support Democratic

candidates, to the franchise. Third, due to the Student Organizing Ban—which prohibits Montanans for Tester from registering and mobilizing voters in high-traffic areas on college and university campuses such as dorms, dining halls, and athletic facilities—Montanans for Tester will inevitably have to dedicate more staff to voter registration and mobilization on campus in order to reach the same number of potential voters, diverting both staff and monetary resources away from other mission-critical efforts.

19.     Indeed, the efforts of Montanans for Tester and MDP to register young voters in 2018 provide a particularly poignant example of the inevitable impact of the Student Organizing Ban. Prior to the 2018 election, Montanans for Tester— working with MDP—registered over 3,000 new voters on college campuses through a focus on voter registration in high-traffic campus areas such as dorms and dining halls. The Student Organizing Ban would make such efforts illegal.

20.     Plaintiff MACEE PATRITTI is a resident of, and registered voter in, Jefferson County, Montana. She is 19 years old and a freshman at the University of Montana. Ms. Patritti is active in politics and was a student intern for the Montana Democratic Party during the 2020 election. As part of her responsibilities as an intern, Ms. Patritti went onto the campus of Montana Technological University in Butte, Montana to register students to vote, including in facilities such as dining halls. But for the Student Organizing Ban, Ms. Patritti would seek to conduct the

8

same activities again in coordination with a political committee such as MDP or Montanans for Tester. These activities would now be prohibited by the Student Organizing Ban, injuring Ms. Patritti by restricting her ability to engage in core political expression protected by the First Amendment. The Student Organizing Ban further injures Ms. Patritti by abridging her right to vote due to her age in violation of the Twenty-Sixth Amendment.

21.    Defendant CHRISTI JACOBSON is the Secretary of State of Montana and is named as a Defendant in her official capacity. The Secretary is Montana's chief election officer, vesting her with the authority "to obtain and maintain uniformity in the application, operation, and interpretation of the election laws other than those in Title 13, chapter 35, 36, or 37." Mont Code Ann. § 13-1-201.

22.    Defendant JEFFREY MANGAN is the Montana Commissioner of Political Practices and is named as a Defendant in his official capacity. The Commissioner is charged with "investigating all of the alleged violations of the election laws contained in chapter 35 of this title or [chapter 37] and in conjunction with the county attorneys is responsible for enforcing these election laws." Mont Code Ann. § 13-37-111(1). This includes, among other things, the regulation of expenditures by political committees, *id*. 13-37-229, and the regulation of election materials distributed by political committees, *id*. 13-35-225.

## STATEMENTS OF FACTS AND LAW

23.    For years, Montana has been a leader in administering secure and accessible elections. The record-breaking turnout that Montana saw in the 2020 general election—especially among young voters—is evidence that when it is easier to vote, more people vote. And the increased participation of young voters, in particular, was striking: over 40% more Montanans between the age of 18 and 29 cast a ballot as compared to the 2016 presidential election. In response, the Montana Legislature began to dismantle a number of the procedures and practices that made it easier for young Montanans to participate in the political process.

24.    But the Montana Legislature did not stop at voting procedures. In the wake of successful organizing and mobilization efforts by a number of organizations, including MDP and Montanans for Tester, the Legislature passed the Student Organizing Ban with the intent to hamstring political committees aimed at increasing the engagement of college students across Montana.

25.    The Legislature used a series of rare procedural maneuvers to transform SB 319 from what was originally a pure campaign finance bill to one with profound implications for the free speech rights of Montana's college students.

26.    When State Senator Greg Herz introduced SB 319 on February 19, 2021, it was a campaign finance bill. The substance of the bill related entirely to

campaign finance regulations—specifically, the use of and reporting requirements for joint fundraising committees.

27.     On the day Senator Herz introduced the bill, it was referred to the Senate's State Administration Committee. The bill received a hearing on February 26, 2021, passed out of the State Administration Committee on March 1, 2021, and passed out of the Senate entirely on March 2, 2021.

28.     When SB 319 reached the Montana House of Representatives, it was referred to the House's State Administration Committee. The bill received a hearing in the House on March 17, 2021, passed out of the State Administration Committee *with amendments* on March 23, 2021, and was returned to the Senate—as amended—on April 6, 2021.

29.     After failing to act on SB 319 for more than two weeks, the Senate rejected the House's amendments on April 23, 2021.

30.     It is the Montana Legislature's general practice to resolve any discrepancies between two versions of a bill using a conference committee, composed of three members of the House and three members of the Senate. The conference committee's work is limited to accepting, rejecting, or amending the disputed amendments.

31.     If a conference committee fails to reconcile the disputed amendments, a so-called "free" conference committee can convene to salvage the bill.

32.    A free conference committee has a broader mandate than a typical conference committee and is empowered to consider and adopt any amendment within the scope and title of the bill, even if such an amendment was not included in either chamber's version of the original bill.

33.    In an unusual procedural move, the Legislature never appointed a conference committee to resolve the discrepancies between the House and Senate version of SB 319. Instead, in the last days of the legislative session, the Legislature sent the bill directly to a free conference committee.

34.    On April 27, 2021, the free conference committee convened to consider possible amendments to SB 319.

35.    During a closed-door meeting that lasted just under eighteen minutes, the members of the free conference committee adopted four amendments that fundamentally altered the scope and substance of SB 319.

36.    The free conference committee did not seek or allow public comment on the amendments, nor were they subject to the scrutiny of the relevant House or Senate committees.

37.    The most consequential of these amendments, the Student Organizing Ban (which is found in Section 21 of SB 319), prohibits political committees from directing, coordinating, managing, or conducting any "voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or

12

voter turnout efforts for a federal, state, local, or school election inside a residence hall, dining facility, or athletic facility operated by a public postsecondary institution." SB 319 § 21(1).

38.     The Student Organizing Ban is designed to limit the ability of newly-enfranchised Montana voters to fully exercise the franchise by limiting the information available to them and by stopping them from engaging in constitutionally protected political speech on college campuses.

39.     The architect of the Student Organizing Ban, State Senator Steve Fitzpartick, explained that he had "no problem if kids vote," but he wanted to protect them from being "exploited" by "really activist causes."

40.     In addition to its problematic purpose, the Student Organizing Ban will chill constitutionally protected speech far outside the activities specifically enumerated in the bill.

41.     For example, the Student Organizing Ban fails to provide any guidance as to what a "voter identification effort" means. The possibilities cover a range of constitutionally protected activity, from commonplace election-related undertakings like door-knocking and one-on-one advocacy, to information about how to acquire

sufficient identification to cast a ballot, to conversations about candidates, issues, and initiatives supported or opposed by a particular political committee.

42.     Moreover, although the Student Organizing Ban purports to allow in-person organizing efforts provided the activity is undertaken "at [an] individual's exclusive initiative," SB 319 § 21(2), neither SB 319 nor the Montana Election Code define precisely what it means to undertake such activities at an "individual's exclusive initiative."

43.     The Student Organizing Ban would prohibit any college student who lives in a dorm or regularly eats in a dining hall from undertaking or participating in any of the activities prohibited by the Student Organizing Ban if that student undertook them in conjunction with any political committee. Put another way, the Student Organizing Ban forbids students from engaging in constitutionally protected activities and core political speech in the place they call home.

44.     Because Montana's definition of a "political committee" encompasses a broad swath of political and civil rights organizations, *see* Mont. Code Ann. § 13-1-101(31), the Student Organizing Ban will significantly hamper student-organizing efforts on campuses across Montana.

45.     Notably, Montana law does not exempt student groups who meet the definition of a "political committee" from the rules and regulations governing such organizations. And because an organization becomes an "incidental political

14

committee" if it makes a single expenditure supporting or opposing a candidate or ballot initiative, the Student Organizing Ban will have significant consequences for any student group that chooses to take a stand on the most important political and social questions of this era. Mont. Code Ann. § 13-1-101(23).

46.     The risk of unconstitutional chilling is particularly pronounced because of the steep penalties that accompany a violation of the Student Organizing Ban. Any political committee that violates the Student Organizing Ban is subject to a "civil penalty of $1,000 for each violation" and "[e]ach day of a continuing violation constitutes a separate offense." SB 319 § 21(4).

47.     Put simply, the Student Organizing Ban violates the First Amendment's core principles by attacking and suppressing political speech. And, because it does so by attacking speech in a blatant attempt to suppress the voting power of college students—and no other group—it also violates the Twenty Sixth Amendment.

## CLAIMS FOR RELIEF

## COUNT I

**First Amendment and Fourteenth Amendment**
**U.S. Const. Amend. I and XIV, 42 U.S.C. § 1983, 28 U.S.C. § 2201, 28 U.S.C. § 2202**
**Restriction on Core Political Speech**

48.     Plaintiffs MDP, Montanans for Tester, and Macee Patritti reallege and incorporate by reference paragraphs 1 through 49 as though fully set forth herein.

15

49.   The First Amendment, by way of the Fourteenth Amendment, bars Montana from abridging the right to free expression. The right is at its most protective when the speech at stake is political, serving "to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596, 604 (1982).

50.   The Student Organizing Ban meets the First Amendment at its apogee. Montana has restricted Plaintiffs' rights to "participate in and contribute to" our system of government by barring "political committees" like MDP and Montanans from Tester "from direct[ing], coordinat[ing], manag[ing], or conduct[ing] any voter identification efforts, voter registration drives, signature collection efforts, ballot collection efforts, or voter turnout efforts for a federal, state, local, or school election inside a residence hall, dining facility, or athletic facility operated by" the Montana State University System. SB 319 § (21)(1). It has also unconstitutionally restricted the ability of students like Plaintiff Macee Patritti to associate with organizations such as MDP and Montanans from Tester in undertaking these expressive acts.

51.   More severe than a law governing "the mechanics of the electoral process," the Ban "is a regulation of pure speech," targeting "only those" communications "containing speech designed to influence the voters in an election." *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 345 (1995). And it does so on college campuses, fora long recognized as open to free and robust expression. *See*